# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>MEYER DISTRIBUTING, INC.,<br><br>Defendant. | Civil Action No. 3:25-CV-00004-MPB-CSW<br>Honorable Judge Mathew P. Brookman |

**PLAINTIFF'S BRIEF IN SUPPORT OF THE UNOPPOSED MOTION TO ENTER CONSENT DECREE**

The United States of America, on behalf of the U.S. Environmental Protection Agency ("EPA"), respectfully moves this Court to enter the Consent Decree lodged in this action on January 6, 2025. ECF No. 3-1. If entered, the proposed Consent Decree will resolve the Clean Air Act violations the United States alleged against Defendant Meyer Distributing, Inc. in its Complaint. ECF. No. 1.

The Justice Department published notice of the proposed Consent Decree in the Federal Register, providing opportunity for public comment for 30 days. 90 Fed. Reg. 2746-47 (Jan. 13, 2025). The public comment period has expired, and the United States received no comments.

The settlement is fair, reasonable, adequate, and consistent with the purposes of the Clean Air Act. The United States therefore respectfully moves the Court to enter the proposed Consent Decree as a final judgment.

## BACKGROUND

On January 6, 2025, the United States filed a Complaint against Meyer Distributing, Inc. ("Meyer") seeking injunctive relief and civil penalties for violations of the Clean Air Act (the "Act") and simultaneously lodged a proposed Consent Decree resolving the claims. ECF Nos. 1, 3-1. The Complaint alleges that Meyer, a wholesale distributor of automotive parts, sold and offered to sell over 600 different devices that bypass, defeat, or render inoperative emission controls ("Aftermarket Defeat Devices") installed on motor vehicles or motor vehicle engines (collectively "motor vehicles") in violation of Section 203 of the Act. ECF No. 1 ¶¶ 2, 3; 42 U.S.C. § 7522(a)(3). EPA estimates that these Aftermarket Defeat Devices have resulted in excess emissions equivalent to adding over 700,000 vehicles to the nation's roads, posing a serious threat to human health. ECF No. 1 ¶¶ 4–5.

The proposed Consent Decree reflects two years of productive discussions and resolves the allegations of the Complaint. ECF No. 3-1.

## THE CONSENT DECREE

The proposed Consent Decree requires Meyer to pay a civil penalty, comply with the Act going forward, undertake various measures to prevent future violations, and carry out a mitigation project to offset some of the excess emissions caused by its violations. Under the terms of the proposed Decree, Meyer shall pay a civil penalty of $7.4 million with interest accruing from January 6, 2025, through the date of payment. ECF No. 3-1 ¶ 8.

Specifically, the Consent Decree prohibits Meyer from manufacturing, selling, offering for sale or installing Aftermarket Defeat Devices, and requires it to destroy all such devices within its control. *Id.* ¶¶ 12, 14(a). Also, Meyer may not provide technical support or support warranty claims for these devices, and it shall conduct annual employee trainings on complying

with the Act. *Id.* ¶¶ 14(b), (d), 16. Lastly, Meyer must complete a mitigation project—decommissioning a tugboat with a Tier 0 engine and replacing it with a new tugboat with a lower-emissions Tier 4 engine—to offset some of the excess emissions caused by its violations. *Id.* ¶ 19, Appendix D.

Finally, the proposed Decree includes standard provisions regarding recordkeeping and reporting, stipulated penalties, dispute resolution, and force majeure. It resolves the violations alleged in the Complaint and may be terminated after Meyer completes and complies with the injunctive relief for at least three years. *Id.* ¶¶ 58, 72.

## ARGUMENT

I.  *Standard of Review*

Courts in the Seventh Circuit will approve a consent decree if it is procedurally and substantively fair, reasonable, and consistent with applicable law. *See United States v. George A. Whiting Paper Co.*, 644 F.3d 368, 372 (7th Cir. 2011); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889–90 (7th Cir. 1985); *United States v. BP Expl. & Oil Co.*, 167 F. Supp. 2d 1045, 1049 (N.D. Ind. 2001); *United States v. Seymour Recycling Corp.*, 554 F. Supp. 1334, 1339 (S.D. Ind. 1982).

Public policy strongly favors settlements of disputes without protracted litigation. *See Donovan v. Robbins*, 752 F.2d 1170, 1177 (7th Cir. 1985) (public policy strongly holds "a presumption in favor of approving the settlement"); *BP Expl. & Oil Co.*, 167 F. Supp. 2d at 1050 ("In its review, the Court must keep in mind the strong policy favoring voluntary settlement of litigation."). Accordingly, while approval of a settlement is in the discretion of the trial court, courts usually exercise this discretion in a "limited" and "circumscribed" manner. *United States*

*v. Bliss*, 133 F.R.D. 559, 567 (E.D. Mo. 1990); *United States v. Findett Corp.*, 75 F. Supp. 2d 995, 1000 (E.D. Mo. 1999).

This deferential review is particularly appropriate where "a consent decree has been negotiated by the Department of Justice on behalf of a federal agency, like the Environmental Protection Agency, which enjoys substantial expertise in the environmental field." *BP Expl. & Oil Co.*, 167 F. Supp. 2d at 1050; *see also United States v. Town of Timmonsville*, No. 13-cv-1522, 2013 WL 6193100, at *2 (D.S.C. Nov. 26, 2013) ("There is a strong presumption in favor of approval of a consent decree proposed by the United States on behalf of EPA."); *Bragg v. Robertson*, 83 F. Supp. 2d 713, 717 (S.D. W. Va. 2000) (citation omitted) ("[W]here a government agency charged with protecting the public interest has pulled the laboring oar in constructing the proposed settlement, a reviewing court may appropriately accord substantial weight to the agency's expertise and public interest responsibility.").

Additionally, in reviewing a consent decree negotiated to enforce compliance with the environmental laws, "the controlling criteria is not what might have been agreed upon . . . nor what the district court believes might have been the optimal settlement." *United States v. Cannons Eng'g Corp.*, 720 F. Supp. 1027, 1036 (D. Mass. 1989) (internal citations omitted), *aff'd*, 899 F.2d 79, 84 (1st Cir. 1990); *Bragg v. Robertson*, 54 F. Supp. 2d 653, 663 (S.D. W. Va. 1999) (reviewing a settlement, the inquiry is directed to whether the proposed settlement is a fair and reasonable compromise, and not to "whether the settlement is one which the court itself might have fashioned, or considers as ideal."). This is particularly true in disputes involving environmental violations "where voluntary compliance by the parties . . . will contribute significantly toward ultimate achievement of statutory goals." *Kelley v. Thomas Solvent Co.*, 717 F. Supp. 507, 516 (W.D. Mich. 1989) (citations omitted). "A remedy that everyone agrees

to is a lot more likely to succeed than one to which the defendants must be dragged kicking and screaming." *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.*, 921 F.2d 1371, 1383 (8th Cir. 1990).

> II.     The Proposed Consent Decree is Procedurally and Substantively Fair

A consent decree is considered procedurally fair when it has been negotiated by sophisticated counsel and is a product of back-and-forth discussions. *See e.g. BP Expl. & Oil Co.*, 167 F. Supp. 2d at 1051 ("Procedural fairness concerns the negotiations process, i.e., whether it was open and at arms-length"); *Haber Land Co. v. Am. Steel City Indus. Leasing*, No. 1:18-cv-04091, 2020 U.S. Dist. LEXIS 105616, at *10 (S.D. Ind. June 1, 2020) (considering "candor, openness, and bargaining balance"). Here, the proposed Decree is the product of two years of good faith negotiations by the parties, each of whom were represented by sophisticated counsel and technical staff. The proposed Decree was also lodged for public comment and no comments were received. It thus bears the hallmarks of procedural fairness. *BP Expl. & Oil Co.* 167 F. Supp. 2d at 1051; *Haber Land*, 2020 U.S. Dist. LEXIS 105616 at *10.

Substantive fairness "concerns concepts of corrective justice and accountability." *United States v. Wis. Elec. Power Co.*, 522 F. Supp. 2d 1107, 1112 (E.D. Wis. 2007) (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 86 (1st Cir. 1990)); *see Whiting Paper*, 644 F.3d at 372 (citing *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003)). Here, the Consent Decree holds Meyer accountable by requiring it to stop all violative sales, take measures to prevent future violations, and pay a $7.4 million penalty. The civil penalty recaptures the economic benefit Meyer accrued through its violations and is sufficient to deter future violations, while also balancing Meyer's relative cooperativeness and lack of prior enforcement history, consistent with the statutory factors set forth in 42 U.S.C. § 7413(e). Moreover, the mitigation

- 5 -

project remedies some of the harms associated with Meyer's violations.  Finally, failure to comply with provisions of the proposed Decree will result in additional stipulated penalties, further ensuring ongoing accountability.  The proposed Decree thus demonstrates substantive fairness.  *See Wis. Elec. Power*, 522 F. Supp. 2d at 1112; *Whiting Paper*, 644 F.3d at 372.

       III.     *The Proposed Consent Decree is Reasonable and Adequate*

The second prong of the analysis is whether the proposed Consent Decree is reasonable and adequate.  The Court's reasonableness inquiry considers "the nature and extent of the potential hazards," the availability of alternatives, the extent to which the public interest is served, and the strength of the Government's case.  *Seymour Recycling*, 554 F. Supp. at 1339; *BP Expl. & Oil Co.*, 167 F. Supp. 2d at 1053 (citing *Akzo*, 949 F.2d at 1436 and *Cannons*, 899 F.2d at 89–90).  To determine adequacy, courts look to "the decree's likely efficaciousness as a vehicle for cleansing the environment."  *Cannons*, 899 F.2d at 89–90; *accord Haber Land*, 2020 U.S. Dist. LEXIS 105616, at *3; *United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 910 (E.D. Wis. 2004).  In particular, "tailored relief" covering short- and long-term equipment improvements, detailed schedules, required contractual obligations, and reporting requirements are all indicators of adequacy.  *See United States v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 281 (1st Cir. 2000) (citing *United States v. District of Columbia*, 933 F. Supp. 42, 51 (D.D.C. 1996)).

Here, the proposed Decree is reasonable and adequate because it addresses the unlawful air pollution in a way that is protective of human health and consistent with the available relief the government could seek in litigation.  The proposed Decree prohibits further violations, mitigates some of the excess emissions, and acts as a deterrent to both Meyer and others in its industry.  In particular, the proposed Decree contains measures that require internal checks to

ensure Meyer's continued compliance such as mandating annual training, changes to marketing materials, and notices to employees and customers. ECF No. 3-1 ¶¶ 14(e), (f), (g), 16. The proposed Decree targets not only Meyer's ultimate actions but also forces the company to change internal processes to ensure long-term compliance with the Act and thus serves as an effective vehicle for maintaining the nation's air resources and protecting public health. *See Cannons*, 899 F.2d at 89.

Moreover, entry of the proposed Decree would ensure that the compliance measures are implemented immediately without the substantial expenditure of taxpayer and judicial resources that would be necessitated by litigation. Thus, not only does the proposed Decree serve the public interest by protecting public health, it also ensures speedy resolution. *See Bragg*, 83 F. Supp. 2d at 717 ("It is precisely the desire to avoid a protracted examination of the parties' legal rights that underlies entry of consent decrees. Both the parties and the general public benefit from the saving of time and money that results from the voluntary settlement of litigation."); *United States v. BP Prods. N. Am., Inc.*, No. 2:12-CV-207, 2012 WL 5411713, at *4 (N.D. Ind. Nov. 6, 2012) (consent decree "serves the public interest by providing these environmental benefits more quickly and at less cost than could be achieved through litigation… a risky proposition with uncertain results.").

    IV.    *The Proposed Consent Decree is Consistent with Statutory Goals*

Finally, in reviewing consent decrees, the Seventh Circuit considers whether the consent decree is sufficiently consistent with the purposes the underlying statutes are intended to serve. *Whiting Paper*, 644 F.3d at 372. The primary purpose of the Act is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of the population[.]" *See* 42 U.S.C. § 7401(b)(1).

Here, because the proposed Decree requires Meyer to comply with the Act, pay a penalty reflecting the severity of the harm, and carry out a mitigation project to offset emissions caused by its violations, it adequately fulfills and is consistent with the Act's purpose. The proposed Decree is also consistent with the Act because it conserves the parties' and Court's limited resources, which for the government can be used towards the detection of violators and enforcement of environmental requirements in other cases. *See United States v. City of Jackson*, 519 F.2d 1147, 1151 (5th Cir. 1975) (where the government is a party to the settlement, a consent decree "maximizes the effectiveness of limited law enforcement resources."); *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 851 (5th Cir. 1975) (Courts are sensitive to the "resources consumed by the federal agencies in negotiating these decrees, as well as the chance justly to finalize a matter that otherwise would burden agencies and courts."); *BP Expl. & Oil*, 167 F. Supp. 2d at 1053 ("The only likely alternative to the decree appears to be complex and lengthy litigation which would expend limited government resources not to mention valuable judicial resources."). Thus, entry of the proposed Decree will improve the environment in the near future and beyond, and thus is consistent with the goals of the Act and the public interest. *See Akzo*, 949 F.2d at 1435.

## CONCLUSION

For the reasons set forth above, we respectfully request that the Court approve and enter the proposed Consent Decree as a judgment of the Court without delay.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

_____
JESSICA DURNEY
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 514-4592
Jessica.Durney@usdoj.gov