**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>Plaintiff,<br><br>vs.<br><br>**MEYER DISTRIBUTING, INC.**<br><br>Defendant. | Civil Action No. 3:25-cv-4<br><br>CONSENT DECREE |

# TABLE OF CONTENTS


I. JURISDICTION AND VENUE .......... 2
II. APPLICABILITY .......... 2
III. DEFINITIONS .......... 4
IV. CIVIL PENALTIES .......... 11
V. COMPLIANCE REQUIREMENTS .......... 12
VI. MITIGATION PROJECT .......... 16
VII. REPORTING REQUIREMENTS .......... 17
VIII. STIPULATED PENALTIES .......... 20
IX. FORCE MAJEURE .......... 24
X. DISPUTE RESOLUTION .......... 26
XI. INFORMATION COLLECTION AND RETENTION .......... 29
XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .......... 31
XIII. COSTS .......... 32
XIV. NOTICES .......... 32
XV. EFFECTIVE DATE .......... 34
XVI. RETENTION OF JURISDICTION .......... 34
XVII. MODIFICATION .......... 34
XVIII. TERMINATION .......... 35
XIX. PUBLIC PARTICIPATION .......... 35
XX. SIGNATORIES/SERVICE .......... 36
XXI. INTEGRATION .......... 36
XXII. FINAL JUDGMENT .......... 37
XXIII. HEADINGS .......... 37
XXIV. 26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION .......... 37
XXV. APPENDICES .......... 37

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent Decree against Meyer Distributing, Inc. ("Defendant") for violations of the Clean Air Act ("CAA") related to Defendant's sale and offer to sell aftermarket products that bypass, defeat, or render inoperative emission controls installed on Motor Vehicles or Motor Vehicle Engines in violation of Section 203 of the CAA;

WHEREAS, Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), prohibits any person from manufacturing, selling, offering for sale, or installing, any part or component intended for use with, or as part of, any Motor Vehicle or Motor Vehicle Engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a Motor Vehicle or Motor Vehicle Engine in compliance with regulations under Title II of the CAA, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use;

WHEREAS, the Complaint alleges that Defendant sold, and/or offered to sell numerous subject aftermarket performance products, the effect of which is to bypass, defeat, or render inoperative a device or element of design installed on or in Motor Vehicles or Motor Vehicle Engines to control the emission of pollutants in violation of Section 203(a)(3)(B) of the CAA;

WHEREAS, Defendant does not admit liability arising out of the conduct, transactions, or occurrences or for any violations alleged in the Complaint;

WHEREAS, the United States' Complaint seeks injunctive relief including mitigation of excess emission associated with the violations, and the assessment of civil penalties; and

WHEREAS, the United States and Defendant (collectively, the "Parties") recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by

the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), and with the consent of the parties, it is hereby ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction over the subject matter of this action and the Parties pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and Sections 204 and 205 of the CAA, 42 U.S.C. §§ 7523 and 7524.

2. Venue in this Court is proper pursuant to Sections 204 and 205 of the CAA, 42 U.S.C. §§ 7523 and 7524, and 28 U.S.C. §§ 1391(b) and 1395(a). For purposes of this Consent Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree or such action and over it, and consents to venue in this judicial district. For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 203, 204, and 205 of the CAA, 42 U.S.C. §§ 7522, 7523, and 7524.

## II. APPLICABILITY

3. The obligations of this Consent Decree are binding upon the United States and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4. No transfer of ownership or operation of any of Defendant's business, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented unless: (a) the transferee

agrees to undertake the obligations required by this Decree and to be substituted for the Defendant as a Party under the Decree and thus be bound by the terms thereof, (b) the United States consents to relieve Defendant of its obligations, and (c) the Court approves the substitution. The United States may refuse to approve the substitution of the transferee for Defendant if it determines that the proposed transferee does not have the financial or technical ability to comply with the requirements of the Decree. At least 30 Days prior to any transfer of ownership or operation of any of Defendant's business, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written transfer agreement, to the United States in accordance with Section XIV (Notices). Any attempt to transfer ownership or operation of any Defendant's business, without complying with this Paragraph, constitutes a violation of this Decree.

5. Within 30 Days of the Effective Date, Defendant shall provide a copy of this Consent Decree (including all Appendices) to all officers, directors, employees, and agents of the Defendant whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6. In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

7. Terms used in this Consent Decree that are defined in the CAA or in regulations promulgated in accordance with the CAA shall have the meanings assigned to them in the CAA or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a. "Auxiliary Emission Control Device" or "AECD" means any element of design of a Motor Vehicle or Motor Vehicle Engine that senses temperature, motive speed, engine RPM, transmission gear, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of a Motor Vehicle's emission control system. *See*, *e.g.*, 40 C.F.R. §§ 86.082-2, 86.416-80, 86.1803-01, 1036.801, 1037.801.

b. "CAA" means the Clean Air Act, as amended, 42 U.S.C. § 7401 *et seq*.

c. "CARB Executive Order" or "CARB EO" means an official exemption issued by the California Air Resources Board ("CARB") exempting an aftermarket Product from the prohibitions of Section 27156 of the California Vehicle Code.

d. "Catalytic Converter" means any part, device, or element of design that promotes chemical reactions to convert toxic gases and pollutants to less harmful gases.

e. "Complaint" means the complaint filed by the United States in this action.

f. "Consent Decree" or "Decree" means this Consent Decree and all appendices attached hereto and identified in Section XXV.

g. "Date of Lodging" means the day that this Consent Decree was lodged with the Court for public comment pursuant to Section XIX.

h. "Day" means a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a

Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

i. "Defendant" means Meyer Distributing, Inc., a corporation with its principal place of business in Jasper, Indiana.

j. "Diesel Oxidation Catalyst" or "DOC" means any oxidation catalyst used to reduce emissions from diesel-fueled vehicles and equipment, including all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other Emissions-Related Elements of Design that collectively constitute the system for implementing this emissions control strategy.

k. "Diesel Particulate Filter System" or "DPF" means all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other Emissions-Related Elements of Design that collectively constitute the system for controlling emissions of particulate matter by trapping such particulates in a filter and periodically oxidizing them through thermal regeneration of the filter.

l. "Effective Date" shall have the definition provided in Section XV.

m. "Emissions-Related Calibrations" means software calibrations programed and installed by the OEM in Motor Vehicles and/or Motor Vehicle Engines for parameters that can affect emissions including but not limited to the following calibrations:

i. calibrations for parameters that affect the operation of the EGR System including EGR flowrate and EGR cooler bypassing;

ii. calibrations for parameters that affect the operation of the DPF, DOC, SCR, and/or or NAC;

iii. calibrations for parameters that affect engine combustion, performance, and operation, including air-fuel ratio, fuel injection timing, fuel quantity, fuel injection pulse width, fuel injection pressure, fuel injection mass, multiple injection patterns, open

loop/closed loop functionality and control, ignition control – (spark timing), boost pressure, limiters (fuel, torque, smoke, etc.), manifold pressure, camshaft timing, electronic throttle control, engine air flow characteristics, mass air flow rate, turbocharger/supercharger air flow, and other parameters disclosed on the certificate of conformity ("COC") which are elements of the OEM's strategy to control the formation of pollutants in the engine; and

iv. calibrations for parameters that affect OBD detection, warning and recording of malfunctions.

n. "Emissions-Related Elements of Design" means any part, device, computer software, electronic control system, computer logic, or calibration installed on or in a Motor Vehicle or Motor Vehicle Engine by an OEM for the purpose of controlling emissions or which must function in accordance with the OEM's design to assure continued vehicle emission compliance. Emissions-Related Elements of Design include:

i. The EGR system;

ii. DOCs;

iii. The SCR system;

iv. DPFs;

v. NACs;

vi. TWCs;

vii. The OBD system;

viii. Diagnostic Trouble Codes;

ix. Oxygen sensors;

x. $NO_x$ sensors;

xi. Ammonia sensors;

xii. PM sensors;

xiii. Urea quality sensors;

xiv. Exhaust gas temperature sensors;

xv. DPF differential pressure sensor;

xvi. AECDs;

xvii. Emissions-Related Calibrations;

xviii. The routing of crankcase emissions to the engine; and

xix. All other parts, devices or elements of design installed in compliance with Title II of the CAA and its regulations.

o. "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

p. "Exempt Product" means a Product that meets the criteria of a Subject Product but has been issued a currently effective CARB EO that has not been rescinded or withdrawn. A Product is not an Exempt Product if it is for a Motor Vehicle or engine configuration not listed in the associated CARB EO.

q. "Exhaust Gas Recirculation" or "EGR" or "EGR System" means all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations and other Emissions-Related Elements of Design that collectively constitute the system for controlling $NO_x$ emissions by recirculating a portion of engine exhaust gas into the cylinders of an engine. EGR includes the EGR cooler, throttle valve, crossover pipe into the intake manifold, the EGR ports in the exhaust manifold, and the temperature and/or pressure sensors used to detect the amount of exhaust gas being recirculated back into the engine.

r. "Fleet Vehicles" means all Motor Vehicles owned or operated by Defendant or any affiliated corporate entity, including Meyer Logistics, Inc.

s. "Identified Subject Products" means the parts, components, and Products identified in Appendix A.

t. "Interest" means the rate set forth at 28 U.S.C. § 1961 on the date 14 Days before a payment to which it is applicable is due.

u. "Marketing Materials" means all materials or communications containing or conveying information that is generated or used by the Defendant, to discuss, describe, or explain any of Defendant's Products, in any form, including but not limited to electronic and hardcopy information used in advertisements, training materials, online videos (e.g., YouTube), social media webpages (e.g., Facebook, Instagram) and user manuals or guides.

v. "Motor Vehicle" has the meaning provided in 42 U.S.C. § 7550(2) and 40 C.F.R. § 85.1703.

w. "Motor Vehicle Engine" means an internal combustion engine that powers a Motor Vehicle.

x. "$NO_x$ Adsorber Catalyst" or "NAC" means the strategy for controlling $NO_x$ emissions from partial lean burn gasoline engines and from diesel engines by adsorbing the $NO_x$ emissions onto a catalyst substrate during lean combustion followed by periodic regeneration of the substrate during short, richer-than-stoichiometric combustion, together with all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations and other Emissions-Related Elements of Design that collectively constitute the system for implementing this emissions control strategy.

y. "On-Board Diagnostics" or "OBD" means the strategy for monitoring the functions and performance of the emissions control system and all other systems and components that must be monitored under 42 U.S.C. § 7521(m) of the CAA and applicable regulations including 40 C.F.R. §§ 86.007-17, 86.010-18, 1806-05 for identifying and detecting malfunctions of such monitored systems and components, and for alerting the driver of such

potential malfunctions by illuminating the malfunction indicator light ("MIL"), together with all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations and other Emissions-Related Elements of Design that collectively constitute the system for implementing this strategy.

z. "Original Equipment Manufacturer" or "OEM" means the manufacturer responsible for the design and production of a Motor Vehicle or Motor Vehicle Engine.

aa. "Other Subject Products" means any Product that is not an Exempt Product and that meets any of the following criteria:

i. any Product that is materially similar in terms of function to a Product identified in Appendix A;

ii. any Product that enables or requires the removal of, overwrites, bypasses, defeats, renders inoperative or deletes the function of one or more Emissions-Related Elements of Design on a Motor Vehicle or Motor Vehicle Engine;

iii. any Product designed or intended for use with, or as part of, any Motor Vehicle, a principal effect of which is to bypass, defeat, or render inoperative any device or element of design installed on or in a Motor Vehicle or Motor Vehicle engine in compliance with regulations under the CAA.

bb. "Paragraph" means a portion of this Decree identified by an Arabic numeral, including any subparagraphs thereof.

cc. "Parties" means the United States and the Defendant.

dd. "Permanently Delete and/or Destroy" means: (1) in the case of hardware, to crush the device and all of its parts or components to render them useless; and (2) in the case of software, tunes, calibrations, or other programming, to completely and permanently erase all programming and information.

ee. "Product" means any part or component (including hardware, software, tunes, programming, calibrations, or a device on which such software, tunes, calibrations or other programming resides) designed or intended for use with, or as part of, a Motor Vehicle or Motor Vehicle Engine.

ff. "Section" means a portion of this Decree identified by a roman numeral, including all Paragraphs thereunder.

gg. "Selective Catalytic Reduction System" or "SCR" means all hardware, components, parts, sensors, sub-assemblies, software, AECDs, calibrations, and other elements of design that collectively constitute the system for controlling $NO_x$ emissions through catalytic reduction using an ammonia or urea-based diesel exhaust fluid ("DEF") as the reducing agent, including without limitation all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other Emissions-Related Elements of Design that collectively constitute the system for implementing this emissions control strategy including but not limited to: (1) the DEF storage tank; (2) the DEF injectors, (3) the dosing control unit, and (4) the SCR catalysts assembly.

hh. "Subject Products" means, collectively, all "Identified Subject Product(s)" and all "Other Subject Product(s)."

ii. "Technical Support" means a range of services offered by Defendant to customers or dealers involving the provision of assistance or advice on the use, installation, or repair of Products. Technical Support includes, but is not limited to, Product owners and user's manuals and answers to specific questions provided by phone, on-line, and in person.

jj. "Three-Way Catalytic Converter" or "TWC" means any catalytic converter that promotes the oxidation of CO and NMHC to form carbon dioxide and water and

reduce $NO_x$ to nitrogen, including all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other Emissions-Related Elements of Design that collectively constitute the system for implementing this emissions control strategy.

kk. "United States" means the United States of America, acting on behalf of EPA.

## IV. CIVIL PENALTIES

8. Within 30 Days after the Effective Date, Defendant shall pay the sum of $7.4 million as a civil penalty, with Interest accruing from the Date of Lodging.

9. Defendant shall pay the civil penalty and any Interest due by FedWire Electronic Funds Transfer ("EFT") to the United States Department of Justice in accordance with written instructions to be provided to Defendant, following entry of the Consent Decree, by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Southern District of Indiana. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

William J. Sauers
King & Spalding LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
wsauers@kslaw.com

on behalf of Defendant. Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XIV (Notices).

10. At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in accordance with Section XIV (Notices); and (iii) to EPA in accordance with Section XIV. Such notice shall state that the payment is for the civil penalties owed pursuant to the Consent Decree in *United States v. Meyer Distributing Inc.* and shall reference the civil action number, CDCS Number, and DOJ case number 90-5-2-1-12694.

11. Defendant shall not deduct any penalties or Interest paid under this Decree in accordance with this Section or Section VIII (Stipulated Penalties) in calculating federal income tax.

## V. COMPLIANCE REQUIREMENTS

12. Prohibitions Pertaining to Subject Products. Beginning no later than March 31, 2024, Defendant shall not manufacture, sell, offer to sell, or install any Subject Product or sell or offer to sell a Motor Vehicle with installed Subject Product(s).

13. Beginning no later than March 31, 2024, Defendant shall not remove or render inoperative any Emissions-Related Element of Design installed on or in a Motor Vehicle or Motor Vehicle Engine.

14. Other Compliance Requirements. Unless a different date is indicated below, by no later than the Date of Lodging and continuing thereafter, Defendant shall comply with the following requirements.

a. Deletion and Destruction of Subject Products.

i. Defendant shall Permanently Delete and/or Destroy all Subject Products that were in its possession and control by the Effective Date.

ii. By the Effective Date, Defendant shall provide EPA a certified statement in accordance with Paragraph 26 below that all Subject Products subject to Paragraph 14.a.i above have been destroyed. The statement shall include: (1) as to hardware, a record of the serial number of each hardware device, if applicable, that was destroyed and the date of such destruction; and (2) as to software, tunes, calibrations or other programming: a description of the software, tunes, calibrations or other programming that was permanently erased or deleted and the date of such erasure or deletion ("Destruction Report").

iii. If Defendant subsequently locates or acquires any additional Subject Products not Permanently Deleted and/or Destroyed pursuant to Paragraph 14.a.i, it must Permanently Delete and/or Destroy those Subject Products within thirty Days after discovery, then include a supplemental Destruction Report for those Subject Products in the next semi-annual report due under Paragraph 22.

b. <u>Ceasing Technical Support</u>. Consistent with Defendant's historical practice of not offering Technical Support, after March 31, 2024, Defendant shall not offer or make available any Technical Support or other information (including Marketing Materials) pertaining to the installation, manufacture, sale, use, or repair of any Subject Product.

c. <u>Removing Subject Products from Fleet Vehicles</u>. No later than March 31, 2024, Defendant:

i. shall inspect all Fleet Vehicles and confirm that all Emissions-Related Elements of Design are still installed and fully functional and operational, and

ii. will not install and, if installed, shall uninstall and/or remove all Subject Products from such vehicles and ensure that all Emissions-Related Elements of Design are fully functional and operational.

Defendant shall provide a report in the first semi-annual progress report, required by Section VII (Reporting Requirements), detailing the results of Defendant's inspection of its Fleet Vehicles and any Emissions-Related Elements of Design reinstalled and Subject Products removed.

d. Denial of Warranty Claims. Consistent with Defendant's historical practice of not processing warranties, after March 31, 2024, Defendant shall deny all warranty claims pertaining to any Subject Product.

e. Revision of Marketing Materials. No later than March 31, 2024, Defendant shall not disseminate any Marketing Materials from manufacturers and suppliers that include any information, including but not limited to instructions or demonstrations, that pertains or relates in any way to replacing, overwriting, deleting, bypassing, defeating, or rendering inoperative any emission control device or Emissions-Related Element of Design.

f. Notice to all Subject Product Customers. No later than 30 Days after the Effective Date, Defendant shall transmit a notice that includes the language specified in Appendix B to each known customer to which Defendant sold an Identified Subject Product on or after January 1, 2018.

g. Notice to Employees. Defendant shall post a written notice of applicable Clean Air Act prohibitions, incorporating language contained in Appendix C to this Decree, in conspicuous locations where Defendant's officers and employees will regularly encounter it. These postings must include both hardcopy postings in a physical location and electronic postings either on-line or via email to those employees with email accounts.

h. Officers and Employees Forfeit of Subject Products. Defendant shall:

i. request that each of its employees forfeit any Subject Product in his or her possession, or installed on any Motor Vehicle owned or operated by him or her or under his or her control, by returning such Subject Product to an individual designated by Defendant and identified to EPA for such purpose; and

ii. require that each of its officers forfeit, permanently delete or uninstall, and destroy within 30 Days of Date of Lodging any Subject Product in his or her possession, or installed on any Motor Vehicle owned or operated by him or her or under his or her

control, by returning such Subject Product to an individual designated by Defendant and identified to EPA for such purpose.

15. Notwithstanding the requirements of Paragraphs 13 and 14 above, Defendant may assist customers in removing any Subject Products from vehicles on which they were installed and returning such vehicles to the OEM settings. Defendant may provide Technical Support to customers that does not involve the installation, manufacture, sale, use, or repair of Subject Products.

16. Training of Employees. No later than 30 Days after the Effective Date, and continuing on an annual basis thereafter, Defendant shall conduct a Clean Air Act Compliance Training Program for all officers, employees, contractors, and consultants whose responsibilities involve the marketing, repair, or sale of exhaust or tuning Products and those who supervise such employees (hereinafter "trainees"). No later than 14 Days prior to the first program, Defendant shall provide a copy of all training materials to EPA for comment. The Training Program shall:

a. Include detailed information regarding:

i. The Compliance Requirements set forth in Section V of this Consent Decree;

ii. The acts prohibited by Section 203(a)(3) of the CAA, 42 U.S.C. § 7522(a)(3), including the statutory language of Section 203(a)(3);

iii. The categories of potentially liable persons under the CAA, including individuals;

iv. The relevant maximum civil penalties for each violation of Section 203(a)(3)(A) and 203(a)(3)(B), as adjusted for inflation in 40 C.F.R. Part 19; and

v. The acts prohibited by Section 113(c)(2) of the CAA, 42 U.S.C. § 7413(c)(2), including the statutory language of that Section and the criminal penalties set forth therein.

b. Be conducted in person or, if necessary, virtually;

c. Provide the trainees with a written summary of all training content, including the information required in Paragraph 16.a; and

d. Require all trainees to acknowledge, in writing, that they participated in the training session and received a written summary of all content as required by Paragraph 16.c.

17. Beginning on the Date of Lodging, Defendant shall not;

a. Possess any ownership or interest in any person, defined by 42 U.S.C. § 7602(e), or entity that Defendant knows, or with reasonable diligence should know, manufactures, sells, offers to sell, distributes or installs in a Motor Vehicle or Motor Vehicle Engine any Subject Product in the United States;

b. Assist any person or entity with the manufacture, sale, offer to sell, distribution, or installation of any Subject Product in a Motor Vehicle or Motor Vehicle Engine in the United States; or

c. Earn any income from the distribution or installation of any Subject Product in a Motor Vehicle or Motor Vehicle Engine in the United States.

18. Decree Not a Compliance Determination. Defendant shall not state or imply in any way that, as a result of this Consent Decree, any of its Products are covered by a compliance determination (or similar designation) from EPA.

## VI. MITIGATION PROJECT

19. To mitigate excess tons of $NO_x$ and PM pollutants that EPA contends are associated with the violations alleged in the Complaint, Defendant shall complete one environmental mitigation project ("Mitigation Project" or "Project") as set forth in Paragraphs 19-21 and Appendix D.

20. Due Date. By no later than 30 months from the Effective Date, Defendant shall complete the Mitigation Project as specified in Appendix D. Defendant may, but is not required to, begin implementing the Mitigation Project prior to the Effective Date but not earlier than the Date of Lodging.

21. Mitigation Project Certifications. Regarding the Mitigation Project, Defendant certifies the truth and accuracy of each of the following:

a. That, as of the date of executing this Decree, Defendant is not required to perform or develop the Mitigation Project by any federal, state, or local law or regulation and is not required to perform or develop the Mitigation Project by agreement, grant, or as injunctive relief awarded in any other action in any forum;

b. That the Mitigation Project is not a Mitigation Project that Defendant was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

c. That Defendant has not received and will not receive credit for the Mitigation Project in any other enforcement action; and

d. That the Mitigation Project will not use any federal, state or local funds, grants, or rebates.

## VII. REPORTING REQUIREMENTS

22. By January 31st and July 31st of each year after the Effective Date, and continuing on a semi-annual basis until termination of this Decree, and in addition to any other express reporting requirements of this Decree, Defendant shall submit a semi-annual progress report for the preceding six months ("reporting period"). The semi-annual progress report shall include, but is not limited to, the following:

a. A statement regarding the status of the payment of any stipulated penalties owing pursuant to Section VIII during the reporting period;

b. A list of each Exempt Product Defendant sold during the reporting period and the Exempt Product's associated CARB EO number;

c. As to Subject Products that were Permanently Deleted and/or Destroyed pursuant to Paragraph 14.a during the reporting period, a list of all hardware Subject Products, including Subject Product names, type, serial numbers, and date of destruction; and a list of all software, data, or other information that was Permanently Deleted and/or Destroyed, including the type of software, data, or other information and the date of destruction or deletion;

d. A list of all customers to whom Defendant provided a notification pursuant to Paragraph 14.f during the reporting period and a copy of any such notification provided;

e. A copy of the written notice required to be posted pursuant to Paragraph 14.g and a photograph of all locations where such notice was posted;

f. A list of all Subject Products forfeited in accordance with Paragraph 14.h during the reporting period, the name of the individual to whom the Subject Products were delivered for forfeiture, and documentation of the destruction or deletion of such Subject Products as set forth in Paragraph 14.a;

g. A list of all officers, employees, contractors, and consultants who participated in the Clean Air Act Compliance Training Program during the reporting period, pursuant to Paragraph 16 and copies of the training acknowledgments signed by the participants;

h. A list of the following Products that were sold by Defendant during the reporting period and the quantities sold by Defendant: (1) Identified Subject Products; and (2) Other Subject Products;

i. A description of any other noncompliance with the requirements of this Consent Decree (including all Appendices) during the reporting period, including an explanation of the violation's likely cause and of the specific remedial steps taken, or to be taken, to resolve and/or minimize such violation, and the specific steps to be taken to prevent such further violations; and

j. A progress report with a detailed description of Defendant's efforts toward completing the Mitigation Project.

23. If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the United States of such violation and its likely duration, in writing, within 10 business Days of the Day Defendant first became aware of the violation, with an explanation of the violation's likely cause and of the specific remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report along with the reason(s) why the violation cannot be fully explained. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant became aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of the obligation to provide the notice required by Section IX (Force Majeure).

24. Whenever any violation of this Consent Decree, or any other event affecting Defendant's performance under this Decree, may pose an immediate threat to public health or

welfare or to the environment, Defendant shall notify EPA orally or by electronic means as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

25. All reports shall be submitted to the persons designated in Section XIV (Notices) and shall include the civil action number of this case and the DOJ case number, 90-5-2-1-12694.

26. Each report or other submission to EPA required by this Consent Decree shall be signed by an officer of Defendant and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

27. The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CAA or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

28. Any information provided in accordance with this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII. STIPULATED PENALTIES

29. Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified in the table below, unless excused under Section

IX (Force Majeure), or reduced or waived by the United States pursuant to Paragraph 34. A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

| **Consent Decree Violation** | **Stipulated Penalty Per Violation per Day or Other Measure as Indicated** |
|---|---|
| a. Non or late payment of the civil penalty as required in Section IV. | $1,000 per Day for each Day that the payment is late. |
| b. Manufacture, sale, offer to sell, distribution, or installation of any Subject Product, in violation of the requirements of Paragraph 12. | $2,500 for the first 100 units of Subject Products manufactured, sold or installed or 1.7 times the gross profit, whichever is greater, and $4,500 for each additional unit of Subject Product manufactured, sold or installed or three times the gross profit, whichever is greater |
| c. Remove or render inoperative any device or Emissions-Related Element of Design installed on or in a Motor Vehicle or Motor Vehicle Engine in compliance with the CAA, in violation of the requirement of Paragraph 13. | $20,000 per Motor Vehicle or Motor Vehicle Engine. |
| d. Failure to comply with the requirements of Paragraphs 14.a (Destruction of All Subject Products). | $500 per Day for the first 15 Days of noncompliance; $1,000 per Day for the 16th through 30th Days of noncompliance; and $3,000 per Day thereafter. |
| e. Failure to comply with the requirements of Paragraph 14.b (Prohibition on Technical Support for all Subject Products). | $2,500 per instance of technical support. |
| f. Failure to comply with the requirements of 14.c (Removing Subject Products from Fleet Vehicles). | $5,000 per Fleet Vehicle in noncompliance. |
| g. Failure to comply with the requirements of Paragraphs 14.d (Deny Warranty Claims). | $500 per Day for the first 15 Days of noncompliance; $1,000 per Day for the 16th through 30th Days of noncompliance; and $3,000 per Day thereafter. |
| h. Failure to comply with the requirements of Paragraph 14.e (Prohibitions on Marketing | $2,500 per Marketing Material |

| **Consent Decree Violation** | **Stipulated Penalty Per Violation per Day or Other Measure as Indicated** |
|---|---|
| Materials). | disseminated. |
| i. Failure to comply with the requirements of Paragraph 14.f (Notice to all Identified Subject Product Customers). | $2,500 per customer or Dealer. |
| j. Failure to comply with the requirements of Paragraph 14.g (Notice to Employees). | $500 per Day for the first 30 Days of noncompliance; and $1,500 per Day thereafter. |
| k. Failure to comply with the requirements of Paragraph 14.h (Requirement of Officers and Employees to Forfeit Subject Products). | $500 per Day for the first 30 Days of noncompliance; and $3,000 per Day thereafter. |
| l. Failure to comply with the requirements of Paragraph 16 (Training of Employees). | $1,000 per employee not trained up to a maximum of $50,000 per year. |
| m. Failure to comply with the requirements of Paragraphs 19 and 20 (Mitigation). | $500 per Day for the first 30 Days of noncompliance and $3,000 per Day thereafter. |
| n. Failure to comply with the requirements of Paragraph 22 (submission of semi-annual reports). | $800 per Day for the first 30 Days of noncompliance and $2,000 per Day thereafter. |
| o. Violation of any other requirement of this Consent Decree. | $500 per Day for the first 30 Days of noncompliance and $1,500 per Day thereafter. |

30. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

31. Defendant shall pay stipulated penalties to the United States within 30 Days of a written demand by the United States, unless Defendant invokes the dispute resolution procedures under Section X (Dispute Resolution) within the 30-Day period.

32. Stipulated penalties shall continue to accrue as provided in Paragraph 0 during any Dispute Resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with Interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b. If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with Interest, within 30 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c. If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with Interest, within 15 Days of receiving the final appellate court decision.

33. If Defendant fails to pay stipulated penalties within 30 Days after receiving the United States' written demand, Defendant shall pay Interest on unpaid stipulated penalties as follows: (a) if Defendant has timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest accrues from the date stipulated penalties are due pursuant to Paragraph 32 until the date of payment; and (b) if Defendant does not timely invoke dispute resolution, Interest accrues from Defendant's receipt of the written demand pursuant to Paragraph 31 until the date of payment. Nothing in this Paragraph limits the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties or Interest.

34. The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

35. Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

36. The payment of stipulated penalties and/or Interest pursuant to this Section shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

37. Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Decree or applicable law including mitigation of excess emissions associated with any violations. Where a violation of this Decree is also a violation of relevant statutory or regulatory requirements, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation under the applicable federal requirement.

38. Obligations Prior to the Effective Date. Upon the Effective Date, the stipulated penalties provisions of this Decree shall be retroactively enforceable with regard to any and all violations of Section V (Compliance Requirements) that have occurred prior to the Effective Date of this Decree, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

## IX. FORCE MAJEURE

39. "Force majeure," for purposes of this Consent Decree, means any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of

Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure, such that the delay or non-performance is, and any adverse effects of the delay or non-performance are, minimized to the greatest extent possible. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

40. If any event occurs for which Defendant will or may claim a force majeure, Defendant shall provide notice by electronic transmission to EPA as provided in Section XIV (Notices). The deadline for the initial notice is 72 hours after Defendant first knew or should have known that the event would likely cause a delay or prevent performance. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

41. If Defendant seeks to assert a claim of force majeure concerning the event, within seven Days thereafter the notice under Paragraph 40, Defendant shall submit further notice to EPA that includes: (a) an explanation and description of the event and its effect on Defendant's completion of the requirements of the Consent Decree; (b) a description and schedule of all actions taken or to be taken to prevent or minimize the delay and/or other adverse effects of the event; (c) if applicable, the proposed extension of time for Defendant to complete the requirements of the Consent Decree; (d) Defendant's rationale for attributing such delay to a force majeure if it intends to assert such a claim; (e) a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health or welfare or

the environment; and (f) all available proof supporting any claim that the delay was attributable to a force majeure.

42. Failure to submit a timely or complete notice or claim under Paragraph 40 or 41 regarding an event precludes Defendant from asserting any claim of force majeure regarding that event, provided, however, that EPA may, in its unreviewable discretion, excuse such failure if it is able to assess to its satisfaction whether the event is a force majeure, and whether Defendant has exercised its best efforts, under Paragraph 39.

43. After receipt of any claim of force majeure, EPA will notify Defendant in writing of its determination whether Defendant is entitled to relief under Paragraph 39, and, if so, the excuse of, or the extension of time for, performance of the obligations affected by the force majeure. An excuse of, or extension of the time for performance of, the obligations affected by the force majeure does not, of itself, excuse or extend the time for performance of any other obligation.

44. If Defendant elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 30 Days after receipt of EPA's notice. In any such proceeding, Defendant has the burden of proving that it is entitled to relief under Paragraph 39, that its proposed excuse or extension was or will be warranted under the circumstances, and that it complied with the requirements of Paragraphs 39 - 41. If Defendant carries this burden, the delay or non-performance at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## X. <u>DISPUTE RESOLUTION</u>

45. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section concerning an issue of which it had notice and an opportunity to dispute under this Section prior to an action by the United States to enforce any obligation of Defendant arising under this Decree shall preclude Defendant from raising any such issue as a defense to any such enforcement action.

46. Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 14 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

47. Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and supporting documentation relied upon by Defendant.

48. The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of

Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

49. Judicial Dispute Resolution. Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV (Notices), a motion requesting judicial resolution of the dispute. The motion: (a) must be filed within 20 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph; (b) may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 48, unless the United States raise a new issue of law or fact in the Statement of Position; (c) shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation; and (d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

50. The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

51. Standard of Review. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 47, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

52. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but

payment shall be stayed pending resolution of the dispute as provided in Paragraph 32. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. INFORMATION COLLECTION AND RETENTION

53. The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any of Defendant's business facilities covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a. Monitor the progress of activities required under this Consent Decree;

b. Verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c. Access Defendant's marketing websites;

d. Inspect records and any Product(s) regulated under Title II of the CAA or the regulations promulgated thereunder;

e. Obtain documentary evidence, including photographs, software, or other data or information; and

f. Assess Defendant's compliance with this Consent Decree.

54. Until three years after the termination of this Consent Decree, unless otherwise specified herein, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or

institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

55. At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated in accordance with the requirements of this Consent Decree shall be withheld on grounds of privilege.

56. Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

57. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant

to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

58. This Consent Decree resolves only the civil claims of the United States for the violations alleged in the Complaint filed in this action that occurred through the Date of Lodging.

59. The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree does not limit the rights of the United States to obtain penalties or injunctive relief under the CAA or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 58. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising as a result of Defendant's business or any of Defendant's Products, whether related to the violations addressed in this Consent Decree or otherwise.

60. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Defendant's operations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved under Paragraph 58.

61. This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations,

and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced under any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CAA, or with any other provisions of federal, State, or local laws, regulations, or permits.

62. This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

63. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII. COSTS

64. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to enforce this Consent Decree or collect any portion of the civil penalties or any stipulated penalties due but not paid by Defendant.

## XIV. NOTICES

65. Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by mail or email to the addresses listed below. Submissions required to be made to the United States shall be made to both the Department of Justice ("DOJ") and EPA.

| | |
|---|---|
| As to DOJ by email (preferred): | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-2-1-12694 |
| As to DOJ by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>Re: DJ # 90-5-2-1-12694 |
| As to EPA by email only: | Ed Kulschinsky<br>Kulschinsky.edward@epa.gov<br><br>Mark Palermo<br>palermo.mark@epa.gov<br><br>R5airenforcement@epa.gov |
| As to Defendant: | Jeffrey M. Braun<br>Meyer Distributing, Inc.<br>560 E. 25th Street<br>Jasper, IN 47546<br>Jeff.braun@meyerdistributing.com |
| As to Defendant by e-mail: | Julia Heitz Cassidy<br>Julia.Heitzcassidy@meyerdistributing.com |
| With a courtesy copy to: | William J. Sauers<br>King & Spalding LLP<br>1700 Pennsylvania Avenue, NW<br>Suite 900<br>Washington, D.C. 20006<br>wsauers@kslaw.com |

66. Any Party may, by written notice to the other Parties, change its designated notice recipients or notice addresses provided above.

67. Notices submitted under this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV. EFFECTIVE DATE

68. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVI. RETENTION OF JURISDICTION

69. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, under Sections X (Dispute Resolution) and XVII (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVII. MODIFICATION

70. The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

71. Any disputes concerning modification of this Decree shall be resolved under Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 51, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

72. After Defendant has: (a) completed and complied with all of the requirements of Paragraphs 14 through 16 for at least three years after the Effective Date; (b) paid the civil penalty required by Section IV, including any accrued Interest; (c) completed the Mitigation Project described in Section VI (Mitigation Project) and Appendix D; and (d) paid any accrued stipulated penalties and Interest determined by the United States to be owing pursuant to Paragraph 29, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied these requirements, together with all necessary supporting documentation.

73. Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

74. If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section X of this Decree. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of its Request for Termination.

## XIX. PUBLIC PARTICIPATION

75. This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent

Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XX. SIGNATORIES/SERVICE

76. Each undersigned representative of the Defendant and the Deputy Section Chief for the Environmental Enforcement Section, Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

77. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendant need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXI. INTEGRATION

78. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than the deliverables that are subsequently submitted

pursuant to this Consent Decree, no other document, nor any representation, inducement, agreement, understandings, or promise constitutes any part of this Decree or the settlement it represents.

## XXII. FINAL JUDGMENT

79. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

## XXIII. HEADINGS

80. Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXIV. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

81. For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 162-21(b)(2), performance of Section II (Applicability), Paragraph 5; Section V (Compliance Requirements), Paragraphs 12-14, 16-18; Section VI (Mitigation Project), Paragraphs 19-21, and the associated Appendix D; Section VII (Reporting Requirements), Paragraphs 21-23, 25; and Section XI (Information Collection and Retention), Paragraphs 53-55 is restitution, remediation, or required to come into compliance with law.

## XXV. APPENDICES

82. The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is a list of Identified Subject Products.

"Appendix B" is language to be included in the notice to customers referenced in Paragraph 14.f.

Appendix C" is language to be included in the notice to employees referenced in Paragraph 14.g.

"Appendix D" describes the specifics of the Mitigation Project that Defendant must complete pursuant to Section VI (Mitigation Project).

We hereby consent to the foregoing Consent Decree in the matter of United States v. Meyer Distributing, Inc., subject to public notice and comment:

FOR THE UNITED STATES OF AMERICA:

PATRICIA MCKENNA
Deputy Section Chief

1/6/2025
Date

JESSICA DURNEY
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC 20044-7611

ELIZABETH L. LOEB
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC 20044-7611

We hereby consent to the foregoing Consent Decree in the matter of United States v. Meyer Distributing, Inc., subject to public notice and comment:

FOR THE UNITED STATES OF AMERICA:

ZACHARY A. MYERS
United States Attorney
Southern District of Indiana

1/2/25
Date:

JOI KAMPER
Assistant United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048

We hereby consent to the foregoing Consent Decree in the matter of the United States of America v. Meyer Distributing, Inc., subject to public notice and comment:

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Date: ___________

CECIL RODRIGUES Digitally signed by CECIL RODRIGUES Date: 2025.01.02 13:44:52 -05'00'

CECIL RODRIGUES
Acting Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

ROSEMARIE A. KELLEY
Office Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

MARY E. GREENE
Division Director
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

EDWARD KULSCHINSKY
Attorney-Advisor
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

We hereby consent to the entry of the foregoing Consent Decree in the matter of United States v. Meyer Distributing, Inc., subject to public notice and comment:

FOR DEFENDANT:

12.29.2024
Date:

Jeffrey M. Braun
Chief Executive Officer
Meyer Distributing, Inc.
560 E. 25th Street
Jasper, IN 47546